DECISION.
The defendant-appellant, Judy Dewar, brings this appeal from the conviction entered pursuant to a finding made by the municipal court, sitting without a jury, that she was guilty of a violation of Norwood Codified Ordinance 505.17, captioned "Dangerous and Vicious Dogs." The sentence imposed upon her has been stayed pending this appeal.[1]
We are given two assignments of error:
 1. The trial court erred as a matter of law in not granting the Rule 29 motion as to [the offense of harboring a] dangerous dog after the State's case because [harboring a] dangerous dog is not a lesser included offense of [harboring a] vicious dog under the Norwood statute.
 2. The trial court erred as a matter of law in convicting Judy Dewar of [harboring a] dangerous dog under the Norwood statute because insufficient evidence existed as to the dangerousness of the dog.
Because both assignments involve, fundamentally, the same issue, viz., the effect in law of a motion for acquittal based upon the determination of the sufficiency of the evidence to prove the accusation set forth in a complaint, we address them as one.
The complaint, signed by a Norwood police officer, specified Norwood Codified Ordinance 505.17 as its basis. The officer had responded to a call that had grown out of a series of events that had occurred in mid-afternoon on May 23, 1999.
Virginia Roessler and her husband and children had, at that time, been the neighbors of Judy Dewar and her family for some eleven years. Their residences were separated by fences, one erected by the Roesslers and one by the Dewars. The Dewars kept two dogs as pets.
On May 23, 1999, Daniel Roessler, then seven years old, was assisting his parents by placing bricks in an area between the Roesslers' garage and a chain-link fence on the Dewars' property. Daniel was assigned this task because the space was too narrow to permit access by either his mother or his father. The two dogs owned by Judy Dewar, both of which were licensed, were then in the rear yard of their owner's lot. At trial, Daniel, after being qualified as a witness, testified that he had "looked up and seen the dogs coming after" him, and that they "got" him "by the big fence." His allusion to the "big fence" was to the six-foot-high privacy fence that his parents had erected on their land, as distinguished from the Dewars' fence, which was between forty and forty-eight inches in height. While it is less than clear from the record exactly how one of the dogs was able to reach the boy, it is unquestionable that Daniel received a serious bite on his right upper bicep.
In its opening statement, the prosecution informed the court,
 The evidence will show that the defendant's dog did cause serious injury without provocation and thus meets the element of a vicious dog.
When the prosecution had rested its case-in-chief, the defense moved pursuant to Crim.R. 29 for acquittal, arguing that the evidence adduced was not sufficient to prove that the dogs were "vicious dog[s]" as defined in the ordinance. The court agreed, stating, "[O]bvious[ly], this is not a vicious dog as the ordinance is written * * *." Accordingly, the court granted the motion in part, qualifying its holding that the evidence was insufficient to prove the vicious-dog charge by stating, over the vigorous and detailed objection of the defense, that the offense of harboring a dangerous dog was a lesser offense included within the vicious-dog offense charged in the complaint.
Noting its objection, the defense adduced testimony and, ultimately, renewed its motion for acquittal at the close of all evidence. When the defense had concluded its argument, the court said, "[I]n looking over the ordinance more carefully, [I] would agree with defense counsel that the [offense of harboring a] dangerous dog is not a lesser included offense * * *."
In tacit recognition of the fact that the trial could not properly have proceeded upon the offense of harboring a dangerous dog as a lesser-included offense of the charged offense of harboring a vicious dog, the court then invited the prosecution to amend the complaint to conform to the evidence. The prosecutor responded, "City would entertain that to amend the complaint to state dangerous dog and the section of the ordinance with deleting notation of M1 [sic]." Again over the detailed objection of defense counsel, the court granted the prosecution's motion to amend the complaint. The court then proceeded to find Dewar guilty, as the prosecutor stated it, of harboring a dangerous dog, a misdemeanor of the fourth degree, although the journal entry reflects only an unspecified "finding [of] guilty."
To reverse a conviction for insufficient evidence, a reviewing court must be persuaded, after viewing the evidence in a light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. See State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus. Sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. See State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546. Our examination of the record persuades us that Dewar's assignments of error, considered jointly, are well taken.
We note, preliminarily, that the city has not, pursuant to R.C.2505.22, assigned error relative to the trial court's holding that the offense of harboring a dangerous dog is not a lesser-included offense of the charged offense of harboring a vicious dog. However, the court's holding is relevant to our determination of the challenges advanced on appeal by Dewar and, moreover, would seem to be correct when viewed in light of the analysis set forth in State v. Deem (1988), 40 Ohio St.3d 205,533 N.E.2d 294, paragraph three of the syllabus. See, also,State v. Koss (1990), 49 Ohio St.3d 213, 218, 551 N.E.2d 970,975 (directing that the facts of a case are irrelevant to a determination of whether an offense is a lesser-included offense of the charged offense). We, therefore, hold that the offense of harboring a dangerous dog is not a lesser-included offense of the offense of harboring a vicious dog.
The trial court, at the close of all evidence, acknowledged that it had been mistaken in concluding that a dangerous-dog charge was a lesser one, included within the vicious-dog charge, and then sought to redeem the prosecution by inviting an amendment of the complaint. However, the court had already granted Dewar's motion for acquittal on the vicious-dog charge upon which the city had proceeded, as it had expressly intended to proceed, from the outset. The reversible error committed in this case was that the court, after acquitting Dewar of the charged offense, proceeded to try her for an offense that was not charged in the complaint and that was not a lesser-included offense of the offense charged in the complaint.
By force of Crim.R. 29(A), the complaint upon which Dewar was tried was dismissed as a matter of law when the court granted her motion for acquittal after the prosecution had rested its case. At that juncture, there was no complaint to amend, and because the offense of harboring a dangerous dog charge was not a lesser-included offense of the charged offense of harboring a vicious dog, there was no other basis upon which to proceed. We, therefore, sustain the assignments of error, reverse the judgment of the trial court, and order that Dewar be discharged.
Judgment reversed and appellant discharged.
 GORMAN, P.J., DOAN and SHANNON, JJ.
Raymond E. Shannon, retired, from the First Appellate District, sitting by assignment.
[1] The court sentenced Dewar to thirty days' confinement, but suspended that term and placed her on sixty days' probation, fined her one hundred dollars and costs, and ordered that the dogs be removed from the city within thirty days.